435 A.2d 201

**In the Matter of the CUSTODY OF Robert James LIBERTO and Thomas William Liberto.**

**Appeal of James L. LIBERTO.**

Superior Court of Pennsylvania.

Submitted March 11, 1981.
Filed Sept. 25, 1981.

James M. Horne, State College, for appellant.

Robert K. Kistler, State College, for appellees.

Before HESTER, DiSALLE and MONTGOMERY, JJ.

HESTER, Judge:

In this child custody proceeding, appellant-father appeals from the order of the lower court dated September 26, 1980, wherein the lower court awarded permanent custody of two minor children[1] of the parties to the appellee-mother.

We affirm.

In *Lewis v. Lewis*, 267 Pa.Super. 235, 239–240, 406 A.2d 781, 783–4 (1979), this court summarized the law, and our scope of review governing child custody proceedings:

"It is settled that the paramount concern in a child custody proceeding is to determine what is in the best interests of the child. *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 296 A.2d 625 (1972); *Sipe v. Shaffer*,

---

1. The two children involved in the instant appeal are Robert James Liberto and Thomas William Liberto. Robert was born February 14, 1963. He is now over the age of eighteen. Thomas was born November 11, 1964 which makes him presently sixteen. For the reason that the age of emancipation in this Commonwealth is eighteen, the instant appeal as it applies to Robert, may be moot.

263 Pa.Super. 27, 396 A.2d 1359 (1979). In a contest between parents, each party bears the burden of proving that an award to that party would be in the best interests of the child. *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977). The award must be based on the facts of record and not on mere presumptions; in particular, the tender years presumption is no longer recognized, *Sipe v. Shaffer*, supra; *McGowan v. McGowan*, 248 Pa.Super. 41, 374 A.2d 1306 (1977).

In order to ensure that the best interests of the child will be served, the appellate court will engage in a comprehensive review of the record. *Scarlett v. Scarlett*, 257 Pa.Super. 468, 390 A.2d 1331 (1978); *In re Custody of Myers*, 242 Pa.Super. 225, 363 A.2d 1242 (1976). Thus, while it will defer to the lower court's findings of fact, the appellate court will not be bound by the deductions or the inferences made by the lower court from those facts, but will make an independent judgment based upon its own careful review of the evidence. *Sipe v. Shaffer*, supra; *Scarlett v. Scarlett*, supra. In conducting this review, the appellate court will look to whether all the pertinent facts and circumstances of the contesting parties have been fully explored and developed. See *Sipe v. Shaffer*, supra; *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976). It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself. See *Commonwealth ex rel. Cox v. Cox*, 255 Pa.Super. 508, 388 A.2d 1082 (1978). After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and conclusions. See *Valentino v. Valentino*, 259 Pa.Super. 395, 393 A.2d 885 (1978); *Gunter v. Gunter*, supra. Only with the benefit of a full record and full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review. *Valentino v. Valentino*, supra. Where the record is incomplete or the opinion of the lower court is inadequate, the case will be remanded. See *Valentino v. Valentino*, supra; *Commonwealth ex rel. Forrester v. Forrester*, 258 Pa.Su-

per. 397, 392 A.2d 852 (1978); *Commonwealth ex rel. Cox v. Cox,* supra."

We have engaged in a comprehensive review of the record and are convinced that all pertinent facts and circumstances of the contesting parties have been fully explored and developed; further, we are convinced that the lower court made a penetrating and comprehensive inquiry and, in support thereof, filed a comprehensive opinion containing its findings and conclusions as supported by the record. Thus, we agree with the lower court's ultimate conclusion that it is in Robert's and Thomas's best interest to remain in the permanent custody of their mother, the appellee herein. Hence, we affirm.

The relevant facts adduced at hearing include the following:

1. Three children were born of the marriage between appellant and appellee, Ellen Marie age 18 at the time of the hearing; Robert James born February 14, 1963, and Thomas William born November 11, 1964. Because the daughter, Ellen Marie, was a senior in high school and intended to enter Indiana University of Pennsylvania in the fall, she elected to remain in the general custody of her father in Westmoreland County, Pennsylvania. As a result, Ellen Marie is not directly involved in this proceeding.

2. From 1964 until the early part of 1976, all three children lived with both parties at 399 Oakwood Street, New Kensington, Pennsylvania.

3. In February or March, 1976, appellant moved out of the family home (399 Oakwood Street) and shortly thereafter into an apartment approximately three blocks from the marital residence. Appellee and the three children continued to reside at 399 Oakwood Street until November, 1978 when she and the two boys, Robert and Thomas, moved to State College, Centre County, Pennsylvania, where they currently continue to reside.

4. Appellant and appellee were subsequently divorced from each other in October of 1976.

5. On December 12, 1976, appellant remarried. Appellant, his new wife, Sharon, and Ellen Marie (when not attending college) reside together in New Kensington, Westmoreland County, Pennsylvania.

6. From the time of the parties' separation in early 1976, the two sons, Robert and Thomas, have resided continuously with their mother, first in Westmoreland County, and subsequently in Centre County.

7. Appellee was born in the State College area in Centre County, Pennsylvania, graduated from Penn State University with a Bachelor's Degree, and is gainfully employed in Milesburg, fifteen miles from State College.

8. The appellant also received his Bachelor's Degree from Penn State University, his Master's Degree at the University of Pittsburgh, School of Business, and a Law Degree at Duquesne University Law School. Appellant is currently employed by Westmoreland County as a County Solicitor. In addition, appellant maintains a small private law practice from his home in New Kensington, Pennsylvania.

We have carefully reviewed the record in the instant case and have concluded that the children's best interest would be served in the general custody of their mother.

Both boys appeared in chambers with the Court, the court reporter and counsel present. The younger son Thomas appeared first, prior to the testimony of any of the other witnesses, and testified that he loved both parents but preferred to live with his mother because of "the way she brings me up." Thomas spoke of his friends in State College and the fact that he likes the people better there. He also compared State College with the New Kensington area and indicated that "there's not too much to do in New Kensington," . . . "just hang around the neighborhood and do stuff we shouldn't do." (T. 16). He also told the Court about his part-time employment as a bus boy at The Corner Room two or three nights a week and the fact that he saves most of his earnings.

At the close of testimony, the elder son Robert also appeared in chambers and testified that he loved his mother and wished to live with her. In fact, when asked by the Court if he would be willing to live with his father if so ordered, he replied that he would not.[2] Robert also told the Court of his part-time employment as a cook at Long John Silver's Restaurant.

Both boys confirmed the fact that they usually get their own breakfast and lunch when they are hungry, but their dinner is prepared by the appellee. Either the appellee or Robert, who has his own car, picks Tom up at night after working hours. Aside from their part-time employment which both boys appear to discharge effectively, they are assigned specific chores around the home which they complete. Neither has presented a discipline problem at home or in their community.

Educationally, Robert is a good student (A's and B's), while Tom is, at best, an average student. Appellant made much of this issue, claiming that both boys' grades have suffered since their move from Westmoreland to Centre County; however, the record is devoid of any evidence in support of this contention.

The lower court found, and we agree, that both boys were cooperative, intelligent, and trustworthy. Both expressed strong desires to remain in the general custody of the appellee. As we said in *Husack v. Husack*, 273 Pa.Super. 192, 196, 417 A.2d 233 at 235 (1979):

"In assessing the weight to be accorded the child's preference, his intelligence and maturity is to be considered with increased weight being accorded the preference as the child grows older."

2. In chambers, Robert testified that while visiting the appellant in Westmoreland County in the summer of 1979, his father asked him if he wanted to live with him. When Robert indicated that he would not, appellant brought a Habeas Corpus action in Westmoreland County. Despite same, Robert returned to Centre County. Thereafter, Robert recalls that his father took his best friend's parents to court because they helped him to get back to Centre County (T.120). Appellant's recollection of the series of events which took place in the summer of 1977, differs dramatically (T.83–85).

The appellee described the neighborhood in which she and the boys reside:

"The neighborhood I live in is a family neighborhood with mostly single family homes. There is a park located behind my house. The boys use that frequently. The neighborhood kids play a lot of softball or baseball there. We're located about a mile from the schools and that's easily accessible to them in addition to some of the other activities they participate in.

I have a three-bedroom brick ranch house that's in good condition." (T. 28).

She also testified that she believes the school system in State College is superior to the one in New Kensington. When asked whether she has any discipline problems with her sons, she responded:

"I don't have problems with them. They have curfews and they stick with those curfews and they have responsibilities at home as far as jobs that they help with, such as mowing the yard and they do take turns with kitchen jobs, cleaning and they're also capable of washing their own clothes and helping with other things that need to be done." (T. 32).

She indicated that the boys get along well with each other; that although they sometimes fight, they do talk things over, they spend a fair amount of time together, and they are basically friendly towards each other.

Finally, she testified that she believes the boys should live together:

"I think brothers can benefit from each other and they are different personalities but I think part of learning and part of growing up, I think it makes it easier to relate to other people if you have somebody to,—such as a brother or sister to work with." (T. 33).

After hearing from Robert's American history teacher to the effect that Robert received an "A" in the 11th grade, and from Tom's 10th grade English teacher who indicated that although Tom received a "C" grade, he posed no behav-

ior problem, the Court heard from the mother of one of Tom's friends who indicated that while in her home, "Tom's conduct was always commendable—he was well-mannered, just a nice well-rounded young man I felt." (T.53).

Appellee's family, including her parents, and her brother and his family also live in the State College area. The Court next heard from appellee's brother, a farmer and sales engineer for a metals company who described the boys' conduct:

"A   Well they've been boys. They both are interested in athletics and quite often will have a game of scruff softball or whatever. Bob enjoys snowmobiling on the farms during the snow season. They spend a great deal of time with us in that respect. Tom has also been involved with snowmobiling. Bob has joined us at our hunting camp for the hunting season. So we have a pretty good idea what the boys are.

Q   And what has their behavior been?

A   Their behavior has been good, obedient and considerate." (T.55).

At the close of appellee's case, appellant testified that when he learned in the summer of 1978 that appellee planned to move from Westmoreland to Centre County, he was in a state of "emotional devastation" . . . "it made me virtually catatonic for about three months." (T.69).

He described his relationship with his present wife Sharon as very warm and loving. After informing the Court that Sharon joins with him in seeking custody, he told the Court why he is seeking custody:

"Well, I think that they need direction. They need a two-parent home. At least while they were in New Kensington I was close enough, Sharon was close enough that if they needed help we were there. If they needed guidance, we were there because it's very difficult being a one-parent family.

We want to help them. We wanted to help them very much. The boys, I believe, are virtually running wild. Their mother works a long day. They're working nights or evening and I really don't think she knows what they're up to. They're not bad kids, but I really believe that in the long run, they're going to get in further trouble." (T.73–74).

"We don't invision any day at the beach taking care of those two boys because they're a handful. They're a handful for two people and they do need direction and they do need someone to take charge. And they haven't had it and I can't let this rest any longer. I have to do something about it. I can't sit by and let it happen." (T.75).

When asked whether or not he felt it would be beneficial for his two sons to live together as brothers, he indicated that in his opinion, it would not be necessarily beneficial:

"It may be beneficial for Tom not to be raised with his brother. Tom has been the follower for many years. He's one year behind in school, almost two years younger in age and not an intellectual equal of his brother. It's a very unequal relationship and his older brother does dominate him. Tom has never been an only child and if he would move into our home because Ellen is away at school and if his brother doesn't come with him, he will be an only child and I think he should perhaps have that opportunity.

Q So you feel it would be beneficial to Tom to split him from his brother if Bob won't come and live with you?

A Yes, definitely." (T.80).

Appellant's wife Sharon confirmed appellant's prior testimony that she is more than willing to accept the responsibility of assuming custody of the two boys.

Next, the parties' oldest child, Ellen Marie, age 18, an Indiana University of Pennsylvania college student, described her home life with the appellant and with Sharon in glowing terms.

A social worker for Catholic Charities evaluated appellant's home and in response to a hypothetical question, responded that based upon her observation, appellant maintains a stable and mature environment in his home and that it would be conducive to raising teenage children. (T.107–108).

The lower court thereafter ordered a study from the Centre County Bureau of Children to evaluate appellee's home.

Following our review of the record, we agree with the lower court that it is in Robert's and Thomas's best interest to remain in the general custody of their mother, the appellee. Appellee has raised the boys as a single-parent for approximately 4½ years. Both boys appear to be normal, responsible and loving sons. They appear to have adjusted well to the move from Westmoreland to Centre County and to their parents' separation and subsequent divorce. We believe that their stated preference to remain with their mother is well founded and should be given the import and significance which the lower court properly attached thereto. There is nothing in the record to support appellant's contention that the boys are not receiving adequate supervision and "running wild." Furthermore, we believe under the facts presented here, the two boys should not be separated.

The record indicates that both parents love the children involved in this matter. The record further discloses that both parents have a deep-seated concern for the present, as well as the future welfare of their sons.

We are satisfied that the lower court properly discharged the obligation imposed in custody cases when it structured its comprehensive original Adjudication as well as its Supplemental Opinion. We find no reason to disturb it.

As we stated in *Barbara M. v. Joseph M.*, 286 Pa.Super. 51, 428 A.2d 567 (1981):

It is axiomatic that the singular concern in a custody proceeding is the best interest and welfare of the children involved. *See Wenger v. Wenger*, 267 Pa.Super. 134, 406 A.2d 555 (1979). To ensure that proper attention is ad-

dressed to this concern, we are obligated to exercise the broadest scope of review on a custody matter that is before us on appeal. *Commonwealth ex rel. Drum v. Drum*, 263 Pa.Super. 248, 251, 397 A.2d 1192, 1193 (1979). Nonetheless, since the trial judge is in the best position to evaluate the attitudes, sincerity, credibility, and demeanor of the witnesses involved, his "determination of custody should be accorded great weight." *Commonwealth ex rel. Rainford v. Cirillo*, 222 Pa.Super. 591, 597–98, 296 A.2d 838, 841 (1972) (citation omitted). *See e. g. Trefsgar v. Trefsgar*, 261 Pa.Super. 1, 395 A.2d 273 (1978); *Commonwealth ex rel. Zeedick v. Zeedick*, 213 Pa.Super. 114, 117, 245 A.2d 663, 665 (1968). Thus, although we are not duty bound to accept the trial court's determination, we will defer to it, absent an abuse of discretion, if the facts have been thoroughly investigated by the judge, that investigation is documented by a complete record, and a comprehensive analysis of the judge's findings is contained in a written opinion. *Commonwealth ex rel. Rainford v. Cirillo*, 222 Pa.Super. at 597–98, 296 A.2d at 841. *See Commonwealth ex rel. Schwarz v. Schwarz*, 252 Pa.Super. 95, 380 A.2d 1299 (1977). Instantly, the trial judge has complied with this formula and thus deference to his determination is warranted.

Order affirmed.