**Christine Lynne WHEELER, Appellant**

v.

**Frederick John MAZUR, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 4, 2001.
Filed Feb. 22, 2002.

Gregory G. Schwab, Pittsburgh, for appellant.

Alberta R. Beardsley, Kittanning, for appellee.

Before: HUDOCK, MUSMANNO and TODD, JJ.

HUDOCK, J.

¶ 1 Christine Lynne Wheeler (Mother) appeals from the order of the trial court granting primary physical custody of the parties' two sons to Frederick Mazur (Father). We reverse.

¶ 2 The pertinent facts and procedural history may be summarized as follows: The parties were married on August 7, 1987. Two children were born of the marriage: Frederick Andrew Mazur (Scooter), born January 14, 1988, and Derek Nathan Mazur (Derek), born February 21, 1989. The parties formally divorced by decree dated January 13, 1992. By mutual agreement, primary physical custody of the boys was given to Mother with partial custody and visitation rights granted to Father. Father attempted to modify custody in 1994, but his modification petition was denied by order of court dated August 17, 1994. In this order, legal custody of the boys was shared between the parties, Mother was granted primary physical custody, and Father was awarded partial custody every other weekend during the school year, certain holidays, and six weeks in the summer. In 1996, Mother filed a petition to modify custody, but later withdrew it. By order of court dated August 28, 1996, the trial court noted the withdrawal of the petition and reaffirmed its 1994 order.

¶ 3 Following the divorce, Father did not remarry. He currently is employed as a corrections officer with the Pennsylvania Department of Corrections at the State Correctional Institute in Pittsburgh and has held this position for a little over two years. According to Father, as of January 2001, he altered his work schedule to daylight hours. His current residence is located in Vandergrift, Armstrong County, and he has lived in the former marital residence for over ten years.

¶ 4 Mother resides in Moon Township, Allegheny County, and has lived in this community for over ten years. On March 13, 2000, she married Kenneth Wheeler (Wheeler), a Lieutenant Colonel in the United States Air Force, who she had been married to previously. At the time of the custody hearing, Mother was employed full-time as a medical assistant with The Center for Digestive Health and Nutrition located in Moon Township. Her schedule was strictly daylight, Monday through Friday, with no requirement for weekend work. In a subsequently filed *pro se* motion for reconsideration, however, Mother asserted that she is no longer working, an arrangement she and Wheeler agreed to in order for her to be home for the children.

¶ 5 Upon learning of Mother's desire to relocate to Florida with the children, Father filed a petition for *ne exeat*[1] order on January 4, 2000, and, subsequently, a petition for modification of custody in the Court of Common Pleas of Armstrong County on January 25, 2000. Father then filed a petition for temporary custody on February 4, 2000, pending the outcome of the *ne exeat* hearing scheduled for February 28, 2000. On February 8, 2000, the Court granted Father partial custody of the boys every weekend, pending the hear-

---

1. *"Ne exeat republica"* is Latin for "let him not go out of the republic" and is defined as a writ restraining a person from leaving the republic. Black's Law Dictionary, Seventh Edition, at 1054.

ing on the *ne exeat* petition. On February 29, 2000, the trial court entered an order denying Mother permission to relocate to Florida with the children.

¶ 6 A custody hearing was ultimately held on September 28, 2000. On that date, the trial court issued its statement of reasons for decision and order. By this order, Father was awarded primary physical custody of the children, and Mother was awarded partial custody of the boys on alternate weekends during the school year, certain holidays, and six weeks in the summer.[2] On December 6, 2000, Mother, acting *pro se,* filed a motion for reconsideration of the custody order. Father filed objections to Mother's motion on December 13, 2000. On December 14, 2000, Mother filed a motion for stay of court order and scheduling of supplemental hearing to be presented to the motions judge on January 5, 2001. The court issued an order on December 15, 2000, permitting the children to complete their second nine-week grading period in the Moon Area School District, and denied the remainder of Mother's motion for reconsideration.

¶ 7 On January 12, 2001, the trial court vacated the orders of November 28, 2000, and December 15, 2000, and granted reconsideration of the matter. A pretrial conference was scheduled for January 26, 2001. On that date, the trial court issued an order directing a psychological evaluation of the children, at Mother's expense, and scheduled a supplemental hearing for April 20, 2001. Father filed a petition for costs and counsel fees that same day. This petition was denied by order of court dated February 9, 2001. Father's subsequently filed petition for reconsideration of the petition was also denied that same day.

¶ 8 A supplemental hearing was held on April 20, 2001, and the court issued an order on April 26, 2001, awarding primary physical custody of the children to Father and partial custody of the boys to Mother on alternate weekends during the school year, certain holidays, and seven weeks in the summer. On May 9, 2001, Mother filed with the trial court a motion to stay the custody order, which was denied by order dated May 14, 2001. Mother also filed her notice of appeal with this Court on May 9, 2001. She then filed an application for a stay of the custody order pending appeal, which was denied by this Court by order dated June 28, 2001.

¶ 9 Mother raises the following issues on appeal:

I. WHETHER IN LIGHT OF THE FACTS PRESENTED, THE LOWER COURT ERRED IN ITS APPLICATION OF THE "BEST INTERESTS OF THE CHILD" ANALYSIS WHEN IT FAILED TO CONSIDER ALL RELEVANT FACTORS WHICH WOULD HAVE A DIRECT BEARING ON THE CHILDREN'S CONTINUED WELL BEING[?]

II. WHETHER IN LIGHT OF THE COMPETENT EVIDENCE GENERATED BY LAWSON BERNSTEIN, M.D., P.C., THE LOWER COURT ERRED BY LIMITING THE SCOPE AND BREADTH OF THE COURT ORDERED PSYCHOLOGICAL EVALUATION CONDUCTED BY WILLIAM E. BUSH, Ed.D., R.C.E., TO THE ISSUES OF:

---

**2.** Father's award of primary physical custody of the boys was made contingent upon his changing his work schedule to daylight hours

by January 15, 2001. As noted above, Father was able to do so.

[A] WHETHER THE CHANGE IN PRIMARY PHYSICAL CUSTODY WOULD CAUSE PSYCHOLOGICAL HARM TO THE CHILDREN; [B] WHETHER THERE ARE STRONG BONDS BETWEEN THE CHILDREN AND BOTH NATURAL PARENTS.

Mother's Brief at 6.

¶ 10 As this Court has recently summarized:

Pennsylvania law provides the applicable scope and standard of review in child custody matters as follows:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it.... Thus an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's findings; and thus represent a[n] ... abuse of discretion.

*Silfies v. Webster,* 713 A.2d 639, 642 (Pa.Super.1998) (quoting *Moore v. Moore,* 535 Pa. 18, 28, 634 A.2d 163, 168 (1993)). An abuse of discretion in the context of child custody does not consist merely of an error in judgment; it exists only when the trial court overrides or misapplies the law in reaching its conclusion or when its judgment is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record. *Zullo v. Zullo,* 531 Pa. 377, 613 A.2d 544 (1992). The ultimate test is "whether the trial court's conclusions are unreasonable as shown by the evidence of record." *Silfies, supra* at 642. The broad scope of review attendant to cus-

tody matters does not confer upon the reviewing court, the license or privilege of making independent factual determinations, nor does it authorize us to substitute our judgment for that of the trial court. *Charles v. Stehlik,* 560 Pa. 334, 744 A.2d 1255 (2000); *McMillen v. McMillen,* 529 Pa. 198, 602 A.2d 845 (1992); *Lombardo v. Lombardo,* 515 Pa. 139, 527 A.2d 525 (1987).

*T.B. v. L.R.M.,* 753 A.2d 873, 881 (Pa.Super.2000) (*en banc* ), *aff'd,* —— Pa. ——, 786 A.2d 913 (2001). This broad power of review is not, however,

intended to mean that an appellate court is free to nullify the fact-finding function of the hearing judge. It is a principle which runs through all our cases that the credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom they appear.... Only where we are constrained to hold that there was a gross abuse of discretion should an appellate court interfere with the decisions of the hearing judge.

*Rosenberg v. Rosenberg,* 350 Pa.Super. 268, 504 A.2d 350, 351–52 (1986) (citations and quotation omitted). "[A]lthough the hearing court must determine credibility, its findings must be supported by competent evidence." *In re Custody of Pearce,* 310 Pa.Super. 254, 456 A.2d 597, 599 (1983). It is with these standards in mind that we will review the present case.

¶ 11 "The paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." *Swope v. Swope,* 455 Pa.Super. 587, 689 A.2d 264, 265 (1997). This determination is to be made on a case by case basis. *Myers v. DiDomenico,* 441

Pa.Super. 341, 657 A.2d 956, 957 (1995). "Only where [it finds] that the custody order is 'manifestly unreasonable as shown by the evidence of record ...' will an appellate court interfere with the trial court's determination." *Id.* (citations omitted).

¶ 12 At the custody trial, in addition to his own testimony, Father presented the testimony of Tamara McClain, Mother's former friend, as well as the testimony of his mother and sister. For her part, Mother testified on her own behalf and presented Wheeler as a witness. In addition, the trial court interviewed both boys in chambers and in the presence of counsel for the parties.

¶ 13 As stated above, the trial court issued a statement of reasons for its decision in support of its award of primary physical custody of the children to Father. In summary, the trial court found that: 1) although both parents are committed to their children, Father's love for the boys was "popping out" during his testimony; 2) a strong animosity exists between the parents; 3) primary physical custody has been with Mother since her separation from Father in the early 1990s; 4) both boys have an excellent relationship with members of Father's extended family; 5) Wheeler is an asset to the boys; 6) the practice of religion does not appear to be very important to either parent; 7) Father is more likely to cause the children to develop various hobbies and interests than is Mother; 8) Father is slightly more likely to promote a good relationship between the two boys and Mother than is Mother if she remains primary custodian; 9) both boys expressed a desire to continue to live primarily with Mother; 10) Father's life appears to be a stable one and the environment that he can provide for his two sons would likewise be stable; 11) Mother's life appears to be beset constantly by personal problems and the turmoil related thereto; and 12) the two boys are neither "thriving nor languishing" while in Mother's primary care. *See* Statement of Reasons, 11/28/01, at 1–5.

¶ 14 The trial court then provided the following analysis:

The Court recognizes that stability is important to a child, and that a continuing and stable custodial relationship with a parent that satisfactorily serves the needs of a child should not be ordinarily be disturbed [sic]. As is hinted in the immediately preceding paragraph, the Court is not satisfied that all needs of the children are being satisfactorily served.

The fact is that the boys are neither thriving nor languishing; they could be doing better and they could be doing worse. The Court readily concludes that neither child will regress if he lives primarily with Father[;] Father is simply too devoted to permit that to occur, and the risk of it occurring in a loving environment where attention is paid to the boys is small.

It appears to the Court that the total environment Father would provide the boys is a better one than Mother will provide. The Court was indeed impressed at the hearing by Father's testimony and how his affection and devotion were sincere and evident. The love of Father's own family for the boys was also impressive. The Court will not recount all the factors discussed above; suffice it to say that Father has a lot of positives and few negatives (his inability to communicate with Mother being one).

On the other hand, the factors in Mother's favor, such as her having been primary custodial parent and the decency of her new husband, are largely offset by the fact she is frequently beset by difficult personal problems and often

ends up in bitter, non-speaking relationships with people who were once loved by her, or who at least were important to her. The act of revenge [in filing a grievance with the Air Force against McClain] is cause for concern also. There is the likelihood that Mother's patterns of behavior will be assimilated by the boys if they continue to live with her primarily.

The inability of each boy to articulate why he wanted to remain with Mother inexorably leads the Court to conclude that their expressed wish was shaped more by inertia than any other factor.

On the whole then, it is evident that the boys['] best interests will be served by an award of primary physical custody to Father, but only if he succeeds in having his work schedule changed. The boys will be harmed if they primarily live with a parent whom they do not see on weekdays because of his work schedule.

Statement of Reasons, 11/28/01, at 5–7.

¶ 15 Reduced to its essence, Mother first claims on appeal that the trial court improperly weighed, or ignored, certain evidence, which would support the award of primary physical custody to her. Mother specifically discusses four factors: 1) her status as the primary caretaker of the children for over eleven years; 2) her ability to care for the children as of the time of the custody hearing; 3) the importance of preserving stability in the children's lives by continuing primary custody with her and her spouse and the attendance at the same school district; and 4) the children's preference of continuing to live with her. We will consider each factor separately.

¶ 16 Mother first claims that, pursuant to the parties' 1991 separation agreement and a subsequent 1994 court order, she has been the primary caretaker of the two children since they were tod-

dlers. This Court has consistently held that, "[w]here the child's parents are equally fit, or nearly so, ... the fact that a stable, long-continued and happy relationship has developed between the child and one of the parents may be of critical importance to the formulation of an appropriate custody decree." *Pamela J.K. v. Roger D.J.*, 277 Pa.Super. 579, 419 A.2d 1301, 1307 (1980). As this Court has cautioned, however, "[w]hile the trial court is required to give positive consideration to the parent who has been the primary caretaker and a child should not be lightly removed from a parent with whom that child has lived since birth, we recognize this is only one factor to be considered in determining the best interest of the child." *Wiseman v. Wall*, 718 A.2d 844, 847 (Pa.Super.1998). Nevertheless, "[w]hen both parents are otherwise fit, one parent's role as the primary caretaker may be given weight as the determining factor in a custody determination." *Id.* at 851.

¶ 17 The trial court readily acknowledged Mother's role as the primary caretaker for the boys. As cited above, however, the trial court, while not expressly stating that Mother was an unfit parent, concluded that Mother's "positives" were outweighed by her "negatives." The court found these negatives to be a belief that Mother's life was constantly beset with personal difficulties and the fact that she does not speak with those she used to hold dear:

*Mother's life appears to be beset constantly by personal problems and the turmoil related thereto.* She is now engaged in her fourth marriage. In January of this year, she had a "falling out" with her best friend of 12 years, Tamara [McClain], rendering them bitter enemies. Mother is defending herself currently in a lawsuit commenced by the former best friend to collect $2,600 al-

legedly owed her by Mother for a loan to prevent the mortgage foreclosure sale of Mother's house. In what impresses the Court as an act of pure vengeance, Mother reported her former friend to the United States Air Force Inspector General's office for some kind of irregularity allegedly done by the former best friend in her capacity as a member of the United States Air Force Reserve. The Court cannot help but notice that Mother not only has an inability to communicate with Father, but also is in non-speaking, acrimonious relationships with Father's mother and sister and, of more recent origin, Tamara [McClain].

Statement of Reasons, 11/28/00, at 4–5.

¶ 18 Our review of the testimony presented at the November 28 custody hearing does not support the trial court's conclusion that Mother's life is "beset constantly by personal problems." While the court correctly states that Mother is in her fourth marriage, the court fails to acknowledge that Mother has remarried Wheeler and, according to Wheeler, the boys have known and had weekly contact with him since he first married Mother in 1994. The court did find, however, that Wheeler was a positive influence on the boys. At most, the testimony regarding Mother's "personal difficulties" with Ms. McClain demonstrates a dispute between them that has led to litigation. Additionally, there is no support in the record for the trial court's conclusion that "[t]here is the likelihood that Mother's patterns of behavior will be assimilated by the boys if they continue to live with her primarily." Statement of Reasons, 11/28/01, at 6–7. No testimony was presented, by an expert or otherwise,

that would support the conclusion that Mother's dispute with Ms. McClain, or "non-speaking" relationship with Father's mother and sister, has had any negative effect on the boys. Finally, our review of the record reveals that both Father's mother and Father's sister testified that their feelings toward Mother are such that any failure and/or refusal to build a better relationship is mutual. *See* N.T., 11/28/00, at 86 (Father's mother testified that she chose not to contact Mother); at 89 (Father's sister testified that her relationship with Mother is non-existent).[3]

¶ 19 Moreover, although Ms. McClain testified regarding Mother's poor housekeeping and to having left the children home alone on occasion, most, if not all, of the testimony concerned past observations rather than Mother's present ability to care for the children. This leads us to consider Mother's second claim regarding the factors considered by the trial court in determining that primary physical custody of the children should be transferred to Father. Mother correctly notes that "a parent's ability to care for a child must be determined as of the time of the custody hearing, not as of an earlier time." *Wiseman*, 718 A.2d at 847. Moreover, unless it can be shown that the parent's conduct has had a harmful effect on the child, it should have little weight when making the custody determination. *Pearce*, 456 A.2d at 600. Stated differently, "custody cannot reasonably be granted on the basis of a parent's 'unsettled past' unless 'the past behavior has an ongoing negative effect on the [child's] welfare." ' *Hartman v. Hartman*, 328 Pa.Super. 154, 476 A.2d 938, 941 (1984). At the time of the custody hearing, Mother lived with

---

**3.** The trial court's finding that the boys do not "open up" to their Father because of Mother's animosity toward him is also not supported by the record. Statement of Reasons, 11/28/00, at 3–4. Mother and Wheeler, as well as both boys, each testified that neither Mother nor Wheeler ever disparaged Father in front of the boys.

Wheeler and the two boys in Moon Township. No evidence was presented that Mother's "unsettled past" of frequent moves within the Moon Township School District has continued or that, as Father characterizes it, Mother's life remains "out of control." Father's Brief at 10. If anything, the evidence regarding Mother's present living arrangements reveals that her situation has only improved. Thus, we conclude that the trial court focused on Mother's unsettled past without giving adequate consideration to her current stability. *Id.* at 942.

¶ 20 In her third claim regarding the weight accorded the various factors affecting custody, Mother asserts that, although not the sole criterion, stability is certainly a factor to be considered when determining custody. *Bresnock v. Bresnock,* 346 Pa.Super. 563, 500 A.2d 91, 95 (1985). According to Mother, the trial court failed to consider adequately the fact that the boys were doing well in their present environment and by their own testimony had plans for future activities and participation in sports. We agree.

¶ 21 As cited above, the trial court, while noting that Mother had been, for approximately the last ten years, the boys' primary caretaker, and noting the importance of stability in their lives, nevertheless concluded that the boys' needs were not being satisfactorily met. We have already determined that the record does not support the court's conclusion that Mother's life is frequently beset by personal difficulties and, even if such difficulties arose in the past, there is no record support for the conclusion that these difficul-

ties continue or that they have affected the boys in an adverse manner. While the trial court did find that Father is more likely to spark the boys' interest in hobbies and other extracurricular activities, and "slightly more likely" to promote a continued relationship with Mother, we cannot conclude that these findings are sufficient to warrant a transfer of custody under the circumstances presented. Statement of Reasons, 11/28/00, at 2–3. With regard to hobbies and sports, we see no reason why such actions by Father are inhibited by the previous custody arrangement. Also, while it is clear that animosity exists between the parties, both Mother and Father testified that they would encourage their sons to continue a positive relationship with the other parent. *See* N.T., 11/28/00, at 14 (Father testified that the boys should see Mother on a regular basis); at 116 (Mother testified that she would communicate with Father because it is in the best interest of the children).[4]

¶ 22 The final factor with which Mother takes issue is the weight that the trial court attached to the preferences expressed by Scooter and Derek. The weight to be accorded a child's preference varies with the age, maturity and intelligence of that child, together with the reasons given for the preference. *Swope,* 689 A.2d at 266. Moreover, "[a]s children grow older, more weight must be given to the preference of the child." *E.A.L. v. L.J.W.,* 443 Pa.Super. 573, 662 A.2d 1109, 1118 (1995). As this Court has recently reaffirmed, "where the households of both parents were equally suitable, a child's

4. The trial court also considered the fact that, "not even one year ago, Mother desired to move to the State of Florida to no great advantage to anyone, including the two boys, who would have been thereby effectively insulated from Father except for the summer months." Statement of Reasons, 11/28/00, at

3. Mother testified without contradiction, however, that she considered the move because of a potential job transfer which the military presented her, but that she decided to remain in Pennsylvania because she wanted to retain primary custody of the boys. *See* N.T., 11/28/00, at 96–97.

preference to live with one parent 'could not but tip the evidentiary scale in favor' of that parent." *Bovard v. Baker*, 775 A.2d 835, 841 (Pa.Super.2001) (quoting *McMillen v. McMillen*, 529 Pa. 198, 204, 602 A.2d 845, 848 (1992)).

¶ 23 In the present case, the trial court assigned the boys' preferences little weight because it believed that neither boy could express particular reasons why they wanted to stay with Mother. In the words of the trial court, their preferences were more the result of "inertia" than any other factor. Statement of Reasons, 11/28/00, at 7. Our review of the boys' testimony reveals that this "inertia" represents a clear expression by the two preteen boys of a desire to retain the *status quo*. The record supports Mother's claim that the boys were doing well in school and were looking forward to participating in sports activities during the coming year. Given that the previous custody arrangement governed the manner in which these boys had lived the majority of their lives, we conclude that their preferences, when coupled with the present ability of Mother and Wheeler to care for them, supports a reversal of the trial court's custody order. *See, e.g. Gonzalez v. Gonzalez*, 337 Pa.Super. 1, 486 A.2d 449, 453 (1984) (holding that best interest of child was met by returning daughter to her father's custody; the daughter lived with her father for three years after her mother left marital home and the daughter expressed a preference for living with him); *Matter of Custody of Liberto*, 291 Pa.Super. 26, 435 A.2d 201, 206 (1981) (holding that the mother was properly granted permanent custody where the parties' two teenage boys had been raised by her as a single parent for approximately four and one-half years and both boys expressed a desire to stay with her).

¶ 24 Mother's second claim on appeal, that the trial court erred in limiting the scope and breadth of the court-ordered psychological evaluation of the boys, lacks merit.

¶ 25 As part of her motion to stay the trial court's custody order, Mother appended a report from Lawton Bernstein, M.D., P.C., which concluded that the boys would be irreparably harmed if the proposed transfer of custody were to occur. The trial court, in an abundance of caution, and since no such testimony had been admitted by the parties at the custody hearing, directed that the children be evaluated by William E. Bush, Ed. D., R.C.E., to determine whether there are strong bonds with both parents and whether a change in primary physical custody would cause psychological harm. In his report, Dr. Bush answered the first query in the affirmative and the second in the negative, except for the normal anxiety experienced by any child in the aftermath of a divorce. The trial court adopted Dr. Bush's findings as its own.

¶ 26 Mother now states that the trial court should have allowed Dr. Bush to do a probing evaluation of the children— an evaluation of the type that allegedly was performed by Dr. Bernstein. Father counters that Dr. Bernstein's "report" constituted inadmissible hearsay and was otherwise flawed. Any claim regarding the thoroughness of Dr. Bush's evaluation involves the weight assigned to it by the trial court. The trial court heard the parties' arguments regarding the alleged shortcomings of both expert evaluations. The trial court's decision to accept Dr. Bush's analysis and conclusions as its own is a credibility determination that cannot be disturbed on appeal. *Rosenberg, supra.*

¶ 27 Order reversed. The matter is remanded for entry of a custody order con-

sistent with this opinion. Jurisdiction relinquished.