J-S26008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| A.N. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| C.M. | |
| Appellant | No. 1885 MDA 2016 |

Appeal from the Order Entered October 24, 2016
In the Court of Common Pleas of Adams County
Civil Division at No(s): 08-S-440

BEFORE:  BOWES, DUBOW, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                **FILED JUNE 13, 2017**

C.M. ("Father") appeals from the October 24, 2016 child custody order denying his motion to modify the existing custody arrangement wherein A.N. ("Mother") exercises primary physical custody of their two daughters, S.M. and M.M., in Rotterdam, New York.  We affirm.

S.M. and M.M. were born of Mother and Father's marriage during May 2004, and March 2006, respectively.  Mother initiated the custody litigation on March 27, 2008, and has maintained either primary or shared custody since that date.  The trial court summarized the most recent developments in the case as follows:

> Father resides in Adams County, Pennsylvania[.]  . . .  Mother was permitted by this Court to relocate with the Children to Michigan in 2012, then subsequently relocated to New York State, first to Saugerties, then to Rotterdam. Since relocating in

---

* Former Justice specially assigned to the Superior Court.

2012, Mother has had primary physical custody of the Children and Father has had partial physical custody of the Children on a routine basis throughout the year[.]

. . . .

[On August 13, 2014, Father filed a petition to modify the custody order.] Father requested a reversal of the current physical custody schedule, in effect since October 29, 2014. Father's instant petition raises a number of the same issues that were considered during the hearing that resulted in the October 2014 Order denying Father's prior request for primary physical custody.

A pre-trial conference was held on July 8, 2016, at which time the parties were instructed to file Criminal History/Abuse Verifications for themselves and members of their respective households as required by Pa.R.C.P. 1915.3-2 and 23 Pa.C.S. §5329.2 An in camera interview of the Children was conducted on August 5, 2016. Trial was conducted on October 18, 2016. The undersigned denied Father's request for primary physical custody and outlined the analysis therefor in a written memorandum filed contemporaneously with the Order of Court.

Trial Court Opinion, 12/6/16, at 1-2 (footnotes omitted).

As it relates to the children's respective preferences and the trial court's conclusion that Mother and T.N. (Stepfather") changed employment to alleviate the underlying issues that formed the basis of the custody dispute, we briefly review the relevant testimony.

During the *in camera* hearing, S.M. declared her preference to live with Father, primarily because she felt that Mother worked too often at her managerial position at a restaurant and was seldom home. N.T., 8/5/16, at 4, 9. S.M. discussed one specific occasion in which Mother and Stepfather worked until the early morning hours while she and ten-year-old M.M. were

home alone. *Id*. at 12. That episode led to police involvement and an investigation by the local children's service agency. *Id*. While the matter was subsequently closed without any further proceedings, the ordeal continued to resonate with S.M., and Mother's extensive work schedule started to adversely affect the mother-daughter relationship.

S.M. testified that, beyond the isolated incident discussed above, Mother and Stepfather are seldom home before 5:00 p.m. on weeknights and sometimes worked as late as 9:30 p.m. *Id*. at 5-6. She indicated that they were also rarely home on weekends. *Id*. at 21. S.M. feels overburdened by her household responsibilities while Mother and Stepfather were at work, including caring for her sister and the family's pets. *Id*. at 13-14. She summarized her position as follows, "I feel like it would be neat to have a parent in the area . . . because without a parent it's really just me raising my little sister and I don't want to do that. I mean, I already wasted a lot of my childhood doing that." *Id*. at 24.

Additionally, S.M. believes that Mother's absences impaired her ability to complete homework and precluded her from engaging in after school activities. In sum, S.M. testified that she could handle being home alone for an hour or two, but she considered the custody change when Mother started arriving home from work progressively later. *Id*. at 21.

Unlike her older sister, M.M. was less enthusiastic about the potential custody change. She told the trial court that she missed Mother when she

- 3 -

was away from her for extended periods over the summer and thought that the existing custody schedule was "good." *Id*. at 41. M.M. recognized S.M.'s desire to change the custody arrangement, and felt pressured by her older sister to acquiesce. *Id*. M.M. was unsure whether or not she wanted to change the custody arrangement because she sees benefits to both sides. *Id*. at 41, 45. She also noted that she and S.M. have been left home alone while in Father's custody, albeit during daylight hours. *Id*. at 44. Ultimately, M.M. opined that she would be satisfied with either parent exercising primary physical custody. *Id*. at 45.

During the subsequent evidentiary hearing, Mother described the incident that led to police involvement as follows:

> I was working for a company that was very low staffed. I received a call on a, I believe, it was a Friday evening. They asked me to come in and do something for them, so I told the ladies they could stay up and wait for me to be back, and I left, and they had let the dogs out in the back yard and the neighbor called the police.
>
> When the police arrived [S.M.], my oldest daughter, was in her room with her laptop and earbuds in and my other daughter went to the front door and opened it, and the officer asked if her parents were home, and she said no. And so he believed that she was there by herself, so I received a call and I was already on my way back to the residence.

N.T., 10/18/16, at 41-42.

Mother affirmed that the incident was the only occasion that the children had been left home alone at night. In addition, Mother testified that she subsequently obtained a new position at Chili's that permitted her to

select one of three possible shifts: 7:00 a.m. to 5:00 p.m., 10:30 p.m. to 7:30 p.m., and 3:00 until closing time around midnight. *Id*. at 60. She knows her schedule one month in advance. *Id*. at 47, 60. Stepfather works for the same company and has an identical choice of shifts at a different location. *Id*. at 61. As the general manager, Mother is able to coordinate both schedules to ensure that someone is home with the children on weekends and by 5:00 p.m., on week days. *Id*. at 62, 64. She believes that the increased flexibility of the new employment will alleviate S.M.'s apprehensions about enduring another school year where she is confined home alone with her sister every day after school.

In denying Father's petition for modification, the trial court determined that the underlying issue of Mother's work schedule was rectified and that the children would rarely be left alone after school. In addition, it noted that the revised schedule permits the girls to participate in several extracurricular activities that were previously unavailable to them. Essentially, the court reasoned,

> Father's Petition was a wake-up call for Mother. Had she not made the changes she has made in her work schedule, the Court might have made a different decision. The Court believes that Father and Mother are loving and caring parents who want what is best for their Children.

*See* Analysis and Discussion of Statutory Factors, 10/24/16, at 6. Accordingly, it denied the petition for modification.

Father filed a timely notice of appeal and raised ten issues in a concomitantly filed concise statement of errors complained of on appeal. Instantly, he compresses those ten complaints into one expansive issue, "Whether the Trial Court erred in misinterpreting several items of testimony and thus abused its discretion by denying Father's request for [primary] physical custody." Father's brief at 7. Mother, who is not represented, declined to file a brief.

We review the trial court's custody order for an abuse of discretion. ***S.W.D. v. S.A.R.,*** 96 A.3d 396, 400 (Pa.Super. 2014). We defer to the trial court's factual findings that are supported by the record and its credibility determinations. ***Id***. This Court will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings. ***Id***.

In denying Father's petition for primary custody, which would have had the effect of relocating the children from Rotterdam, New York to Adams County, Pennsylvania, the trial court considered the best interest factors outlined in 23 Pa.C.S. § 5328(a) and the ten relocation factors enumerated in § 5337(h).[1] Section 5328(a) provides an enumerated list of factors a trial court must consider in determining the best interests of a child:

---

[1] In relation to relocation, the Child Custody Law provides:

*(Footnote Continued Next Page)*

- 6 -

*(Footnote Continued)* —————————

**(h) Relocation factors**.--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

*(Footnote Continued Next Page)*

## § 5328.  Factors to consider when awarding custody.

(a) *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

*(Footnote Continued)* ──────────────

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

The court found that § 5337(h)(1) slightly favored Father and §§ (h)(2), (7) and (10) favored Mother.  As we discuss in the body of the memorandum, the children's preferences, considered under § (h)(4), were divided.  The remaining relocation factors were either neutral or inapplicable.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

As it relates to § 5328(a), the trial court determined that factors four, ten, twelve, and fourteen militated in favor of maintaining the status quo and factors five and six favored Father. The court found that factor one promoted both parties equally. Similarly, the benefits of factor seven, regarding the well-reasoned preferences of the children, were divided between the parents. While S.M. had a strong preference to live with Father, M.M. lacked her sister's motivation. The remaining best-interest factors were determined to be either neutral or inapplicable. *See* Analysis and Discussion of Statutory Factors, 10/24/16, at 2-6.

Father asserts that the trial court abused its discretion or committed an error of law with respect to § 5328(a)(5), (10), (12), and (14). In addition, he challenges the trial court's consideration of the family dynamics implicated in § 5328(a)(2) regarding parental supervision, (a)(4) and (10) concerning the stability in education and satisfying the child's educational needs, respectively.

Father argues that the § 5328(a) factors weigh in favor of awarding him primary physical custody. For the reasons that follow, we discern no abuse of discretion.

As it relates to Father's claims that certain aspects of the trial court's consideration were contrary to the weight of the evidence, this Court previously explained,

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.
>
> **R.M.G., Jr., supra** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. **Ketterer v. Seifert**, 2006 PA Super 144, 902 A.2d 533, 539 (Pa.Super. 2006).

**A.V. v. S.T.**, 87 A.3d 818, 820 (Pa.Super. 2014).

Father's arguments misconstrue our standard of review and ignore our deference for the trial court's role as fact finder. His position is founded upon myriad assertions that challenge that aspect of the trial court's role. For example, Father contends that: (1) the trial court should have found a "routine lack of supervision" by Mother; and that the court erred in (2) "favoring Mother on the issue of education;" (3) not giving more weight to the girls' relationship with their extended family; (4) overstating the benefits of maintaining the existing custody schedule; (5) considering Father's failure to disclose his entire criminal history on an affidavit filed with the court;[2] (6) noting a lack of communication regarding S.M.'s glasses; (7) ignoring Father's superior support system; and (8) crediting Mother's ability to

_____

[2] Father contends that the inaccuracies in the criminal history verification affidavit were the consequence of his counsel's inadvertent omissions.

balance her work schedule in order to be more attentive to her children's needs.

Tellingly, Father does not complain that the foregoing aspects of the trial court's determinations are unsupported by the record or even that the underlying evidence of record was so unreliable as to make the court's considerations pure conjecture. Instead, Father essentially entreats that this Court reweigh the evidence adduced during the hearing in order to reach conclusions in his favor. Contrary to Father's protestations, however, a party cannot dictate the weight that the trial court attributed to the evidence or its consideration of any single factor. Indeed, as we explained in *M.J.M. v. M.L.G*., 63 A.3d 331, 339 (Pa.Super. 2013), "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." We simply will not revisit the trial court's factual findings which are based on the certified record in order to reassess the weight of the evidence. *J.R.M. v J.E.A.*, 647, 650 (Pa.Super. 2011) ("with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand"). "Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." *M.J.M.*, *supra* at 334. Having found that the certified record sustains the trial court's above–referenced findings of fact, we do not disturb them.

However, two of Father's assertions warrant further examination. First, Father assails the accuracy of the trial court's findings that he imbibed immediately prior to a custody exchange in Phillipsburg, New Jersey, and the insinuation that he then drove the children for two and one-half hours to his home in Gettysburg. As Father accurately observes, the trial court misconstrued the evidence of record. In actuality, Father drank beer at a Phillipsburg restaurant after he arrived with the children from Gettysburg in anticipation of transferring physical custody to Mother. N.T., 10/18/16, at 86. Hence, the evidence does not support the implication that Father chose to drink beer and then drive the children home.

Nevertheless, the trial court's misstep is harmless. The trial court realized its initial mistake of fact and subsequently explained that, considering Father's prior convictions for driving under the influence of alcohol, the decision to drink during the custody exchange and then make the trek back to Gettysburg was unsound regardless of whether the children were in the car with him. Trial Court Opinion, 12/6/16, at 7.

We agree with the trial court's reasoning. Father has a history of substance abuse and DUI-related offenses. Mother testified about her experience with Father's "excessive drinking" and drug use, behavior in which she believes Father continues to engage, and a DUI arrest since 2012. *Id*. at 85-86. In addition to that evidence, the certified record establishes that Father pled guilty to "Driving While Impaired" in Maryland during 2009,

and to possession of a controlled substance and DUI in Pennsylvania during 2009 and 1992, respectively. *See* Plaintiff's Exhibit 14. While the evidence regarding the prior criminal offenses is stale in relation to any determination of Father's present parenting ability, when viewed through the prism of Father's former experiences, his decision to imbibe while at a custody exchange is compelling evidence of his poor judgment. As the certified record substantiates the trial court's decision, no relief is due.

The final component of Father's argument is that the trial court misconstrued the children's well-reasoned preference to reside in his primary physical custody. As the ultimate arbiter of fact, the trial court is best suited to determine the weight to be given to the children's preferences. *Cardamone v. Elshoff*, 659 A.2d 575, 583 (Pa.Super. 1995). The significance of the preferences vary with age, maturity and intelligence together with the reasons given. *Wheeler v. Mazur*, 793 A.2d 929 (Pa.Super. 2002).

Recall that S.M. clearly favored Father in the custody dispute. Indeed, the record establishes that S.M.'s entreaties to Father were the primary impetus for Father's motion to modify the custody arrangement. While the trial court acknowledged S.M.'s preference, it also determined that her ten-year-old sibling, M.M., favored residing with Mother or, at a minimum, was ambivalent about the potential change. Ultimately, the trial court determined that M.M.'s impartiality and Mother's efforts to alleviate the

issues that fueled S.M.'s yearning to live with Father favored maintaining the status quo as to both children.

The crux of Father's contention is that, in light of M.M.'s equivocations, the trial court should have relied upon the strength of S.M.'s wish to reside with him to bolster "the collective preference of the children" in his favor and award him primary physical custody. Father's brief at 16. We disagree.

Father's current contention fails for the identical reason that his foregoing assertions missed the mark. Plainly, Father is challenging the weight that the trial court attributed to both M.M.'s ambivalence and Mother's ability to rectify the scheduling issues that formed the basis of S.M.'s well-reasoned preference to move to Pennsylvania. While Father's argument consistently refers to portions of the children's testimony proffered during the August 2016 *in camera* hearing for support of his position that Mother is inattentive to their daughters' needs, he neglects to acknowledge that all of the events that S.M. and M.M. discussed related to Mother's prior work schedule. The children have resided with Father since the end of the academic year, when Mother still held her former employment. Hence, Father's argument essentially assails the trial court for declining to attribute greater weight to past events than what is anticipated to occur as a result of the new scheduling opportunities. Accordingly, Father's argument is unpersuasive. As the certified record supports the trial court's finding that Mother alleviated the primary cause of her daughter's distress, the court did

not abuse its discretion in denying Father's motion notwithstanding S.M.'s stated preference to reside with him.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/13/2017