J-S25029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| J.S. | IN THE SUPERIOR COURT OF PENNYLVANIA |
|---|---|
| Appellant | |
| v. | |
| B.M.P. AND M.J.P. | |
| Appellee | No. 1795 WDA 2015 |

Appeal from the Order Dated October 12, 2015
In the Court of Common Pleas of Cambria County
Civil Division at No(s): 2015-2190

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                    **FILED MAY 2, 2016**

Appellant, J.S. (Mother) appeals from the October 12, 2015 order granting primary physical custody of K.P., born in October 2007, to M.J.P. (Paternal Grandmother), partial physical custody to Mother and B.M.P. (Father), and shared legal custody among all of the parties.[1]  After careful review, we affirm.

The relevant factual and procedural history, as gleaned from the certified record, is as follows.  K.P. resided in the care and custody of Mother and Father, who never married, from birth until early 2014.  N.T., 8/14/15, at 38-39.  On January 16, 2014, Mother was incarcerated for a probation

_____

[1] Father did not file a notice of appeal, and he is not a party to this appeal.

violation.[2] *Id.* at 39. K.P. remained in Father's care until February 2014. Trial Court Opinion, 12/18/15, at 3, ¶ 2. On March 10, 2014, the trial court granted legal and physical custody of K.P. to Paternal Grandmother, at which time Mother remained incarcerated, and Father was homeless. *Id.* at 3, ¶ 5.

From June 4, 2014, to July 14, 2014, Mother resided in a halfway house. She was then placed on house arrest until February 28, 2015. *Id.* at 3, ¶ 7. On May 26, 2015, Mother, acting *pro se*, filed a complaint against Father and Paternal Grandmother, wherein she sought primary physical custody of K.P. On July 27, 2015, Mother, through counsel, filed a petition for emergency interim relief, wherein she requested an interim order granting her shared legal and physical custody pending a hearing.

A hearing was held on Mother's custody action on August 14 and October 12, 2015, at which time Mother resided in the Ferndale School District, and Paternal Grandmother resided in the Windber School District. The trial court received testimony from the following witnesses on the first day of the hearing: Paternal Grandmother; Mark Malcotti, a probation officer; Mother; and Amanda Wissinger, K.P.'s kindergarten teacher in the Windber School District. On the second day of the hearing, the trial court received testimony from Father; Tony Mognet, a probation officer; and Mother and Paternal Grandmother, on rebuttal. In addition, the trial court

---

[2] Mother was on probation from 2009, for a crime involving conspiracy to deliver 100 grams of heroin. Trial Court Opinion, 12/18/15, at 3, ¶ 5.

interviewed K.P. *in camera*, who was then nearly eight years old and in second grade in the Windber School District.

On October 13, 2015, the trial court granted Mother, Father, and Paternal Grandmother shared legal custody; maintained primary physical custody with Paternal Grandmother; and granted Mother and Father partial physical custody "as mutually agreed or, if not agreed, as determined by th[e trial c]ourt." Trial Court Order, 10/13/15, at ¶ 2(c). Further, the order directed that the parties "shall have 14 days to submit a Consent Order regarding partial physical custody to be awarded to Mother and Father."[3] *Id.* at ¶ 2(d). On November 10, 2015, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i). The trial court filed its Rule 1925(a) opinion on December 18, 2015.

On appeal, Mother presents the following two issues for our review.

_____

[3] In its Rule 1925(a) opinion, the trial court stated that the custody order is final and appealable because the court "completed its hearing and resolved the ultimate issues of primary and partial physical custody, pending an agreement to or implementation of a partial physical custody schedule." Trial Court Opinion, 12/18/15, 2, n.3. We agree. *See G.B. v. M.M.B.*, 670 A.2d 714, 715 (Pa. Super. 1996) (*en banc*) (stating that, "a custody order will be considered final and appealable only after the trial court has completed its hearing on the merits and the resultant order resolved the pending custody claims between the parties"); *see also Cady v. Weber*, 464 A.2d 423, 426 (Pa. Super. 1983) (holding that the order was final that resolved the ultimate issue between the parties by transferring custody from the grandparents to the mother, even though the details of implementation remained to be worked out pending home studies).

1. Did the trial court err and/or commit an abuse of discretion by finding that the grandmother proved by clear and convincing evidence that the child's best interests would best be served in the primary physical custody of the grandmother?

2. Did the trial court err and/or commit an abuse of discretion by basing the decision to award primary physical custody to a third-party largely based on mother's prior bad conduct, without a proper showing that any such prior conduct has had any ongoing negative effect on the child, instead of focusing on mother's current situation[?]

Mother's Brief at 7.

We review Mother's issues according to the following scope and standard of review.

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination…. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

> *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to

- 4 -

> observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.
>
> **R.M.G., Jr., supra** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. **Ketterer v. Seifert**, 2006 PA Super 144, 902 A.2d 533, 539 (Pa. Super. 2006).

**A.V. v. S.T.**, 87 A.3d 818, 820 (Pa. Super. 2014).

Child custody actions are governed by the Child Custody Act (Act), 23 Pa.C.S.A. §§ 5321-5340. With regard to the presumption in cases concerning primary physical custody between a parent and a third party, the Act provides, "there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence." 23 Pa.C.S.A. § 5327(b). Accordingly, we recognize that when a grandparent is involved in a custody dispute with a parent, the grandparent is a third party and bears this heightened burden. **V.B. v. J.E.B.**, 55 A.3d 1193, 1198-1199 (Pa. Super. 2012) (citation omitted), *citing* **Charles v. Stehlik**, 744 A.2d 1255, 1258 (Pa. 2000), *cert. denied*, **Stehlik v. Charles**, 530 U.S. 1243 (2000).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004).

Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) … when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). This statutory section provides as follows.

**§ 5328. Factors to consider when awarding custody.**

**(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

We have further explained as follows.

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013)….

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V.*, *supra* at 822-823.

Instantly, the trial court considered the Section 5328(a) custody factors on the record in open court at the conclusion of the testimonial evidence. *See* N.T., 10/12/15, at 71-83. The trial court found significant the following factors, and weighed them in favor of Paternal Grandmother:

Section 5328(a)(3), the parental duties performed by each party on behalf of the child; Section 5328(a)(4), the need for stability and continuity in the child's education, family life and community life; Section 5328(a)(9), which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs; Section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child; and Section 5328(a)(14), the history of drug or alcohol abuse of a party or member of a party's household. *See id.* at 71-76, 78-79, 80-83.

Further, in its Rule 1925(a) opinion, the court explained its decision as follows.

> Considering [K.P.]'s stability and Mother's short-term unmonitored sobriety … as well as [K.P.]'s significant educational needs, the trial court found by clear and convincing evidence that the scales were tipped in favor of Paternal Grandmother. Therefore, the trial court appropriately considered Paternal Grandmother's burden of proof as a third-party against a parent and properly maintained primary physical custody of the child with Paternal Grandmother.

Trial Court Opinion, 12/18/15, at 11.

Turning to Mother's first issue on appeal, she argues the record evidence does not support granting Paternal Grandmother primary physical custody. Specifically, Mother argues the record does not demonstrate that (1) she caused "any educational deficit in [K.P.;]" and (2) "ongoing educational concerns" remained with K.P. Mother's Brief at 14-15. In

support of her argument Mother argues "[t]hat statement by the trial court fails to take into consideration the fact that [M]other was in rehab in November of 2013 and jail for a week and a half and that she was in jail beginning in January of 2014 and thus the vast majority of time [K.P.] was in [F]ather's care." *Id.* at 16.

In concluding Section 5328(a)(14) weighed in favor of Paternal Grandmother, the trial court reiterated its findings in its Rule 1925(a) opinion as follows.

> [Since March 10, 2014,] Paternal Grandmother performed "the lion's share of the parenting duties" for [K.P.], including going "above and beyond to make sure that [K.P.]'s deficiencies were appropriately addressed and that [K.P.] would not start out in the educational system at a loss or behind her peers." *See* N.T., [10/12/15], [at] 71-74[; *s*]*ee also* N.T., [8/14/15], [at] 61 (the child's kindergarten teacher explaining that the child completed workbooks with Paternal Grandmother, made big improvements, "came a long way," and made huge gains in knowledge while in Paternal Grandmother's care); N.T.[, 10/12/15], [at] 32 (Father commenting on Paternal Grandmother's parenting). Specifically, Paternal Grandmother arranged for tutoring, counseling, and swimming lessons for the child, as well as completing workbooks with the child. N.T.[, 8/14/15], [at] 8-9, 18, 25-27, 61. Additionally, the trial court found that Paternal Grandmother took initiative in caring for the child's overall physical, emotional, developmental, educational, and medical needs. *See e.g.* N.T.[, 10/12/15], [at] 78-79[; *s*]*ee also* N.T.[, 8/14/15], [at] 27-30, 34 (Paternal Grandmother outlining the schedule she followed with the child, including reviewing schoolwork; completing homework; brushing teeth; bathing; and

attending Bible Study, swimming, ballet, and ice skating).

Conversely, Mother presented no evidence of her efforts to address the child's needs. Rather, Mother claimed she was "never informed of" the child's parent-teacher conferences, "not given any other information regarding her schooling[,]" "was not made aware of" the child's routine medical visits, and "was never given" access to the school's website. N.T.[, 8/14/15], [at] 44-45, 54-55. Based on the foregoing evidence, the trial court found that "Mother has not taken the additional steps to pay careful attention to the child's education [nor is she] as driven as [Paternal Grandmother] is when it comes to making sure that [K.P.] overcomes any remaining educational deficiencies that she has." N.T.[, 10/12/15], at 72-73. These facts weighed heavily against Mother and in favor of Paternal Grandmother, especially in light of credible testimony from the child's teacher and evidence of the child's academic performance and attendance while in Paternal Grandmother's care. N.T.[, 8/14/15], [at] 57-64.

Trial Court Opinion, 12/18/15, at 9-10. Upon review, we conclude the testimony of Mother, Paternal Grandmother, and Amanda Wissinger, K.P.'s kindergarten teacher in the Windber School District, support the trial court's findings.

Specifically, Ms. Wissinger testified that, at the beginning of K.P.'s kindergarten year in 2013, when she was in the care of Mother and Father, she "was very behind socially and emotionally as well as academically in all academic areas." N.T., 8/14/15, at 58. Ms. Wissinger testified that K.P.'s assessment for the first semester indicated, "there were huge gaps in her abilities across the board, in math as well as language arts…. I clearly

state[d K.P.] is struggling in all academic areas…." *Id.* at 59. In addition, Ms. Wissinger testified she revealed on the assessment that K.P. "is not ready to move on to first grade and we would have to schedule a meeting and discuss retaining her in kindergarten to build her needed skills." *Id.* at 60. Further, Ms. Wissinger testified on direct examination to the following.

> Q. [H]ow much contact or cooperation did you have from [K.P.]'s parents in assisting her development?
>
> A. There were [sic] none. We have regular parent conferences every November… Our school district has a texting communication with parents as well as an e-mail so all you have to do is sign up for it and you get notifications there. We send home notes and paperwork. It is on my calendar. It is on the school calendar and I never had a conference with them…. They would've received some type of other reports between that time stating that she is behind and activities sent home. I do something, it is called a book bag activity where it is simply a Ziploc bag where I put reading materials in just for the kids to be doing at home to kind of bridge the gap. None of the materials were ever utilized.

*Id.* In addition, Ms. Wissinger acknowledged that, from the fall of 2013, until March of 2014, K.P. had an excessive number of absences in kindergarten. *Id.* at 62.

Importantly, Ms. Wissinger testified that she performed another assessment of K.P. at the end of March or the beginning of April 2014, at which time she contacted Paternal Grandmother and "asked her to come in to have a meeting with us." *Id.* at 61. She testified that Paternal

Grandmother did attend a meeting at the school, after which Ms. Wissinger observed as follows:

> [K.P.] made big improvements. [Paternal Grandmother] asked what she specifically could be doing at home. Anytime I would send things home, [K.P.] would complete them and send them back. They were also doing activities that [Paternal Grandmother] sought out on her own, work books I believe that [K.P.] used to talk about, doing some things with [Paternal Grandmother]. And you can see on the assessment between the first semester and the second semester huge gains were made. We have … a Diagnostic Reading Assessment and our kindergarten kids, our goal for them is to get to a level 3… It is a state goal, so [K.P.] whenever [Paternal Grandmother] came in to talk to me in March or April was at a level A. That's the lowest level kids can be at…. She went from a level A to the level 3, the goal that was set for her.

*Id.* at 61.

Further, Ms. Wissinger was not K.P.'s first grade teacher, but she reviewed K.P.'s first grade assessment. She testified that the assessment revealed K.P. "started off really good but then she didn't make any gains…. Now compared to kindergarten, she has made a great deal of progress[,] but she still is not where our school would like her to be. She is still struggling but not as much as she was." *Id.* at 63.

Based on the foregoing testimonial evidence, as well as our review of the testimony of Mother and Paternal Grandmother, we discern no abuse of discretion by the trial court in granting Paternal Grandmother primary

- 13 -

physical custody due, in large part, to the educational needs of K.P. Therefore, Mother's first issue on appeal fails.

In her second issue, Mother argues the trial court abused its discretion in basing its custody decision on her drug relapse "from October – November 2013 with no evidence of further drug abuse issues in [the] 23 months by the time of the October 2015 hearing…." Mother's Brief at 21. Mother relies on this Court's decision in *Wheeler v. Mazur*, 793 A.2d 929 (Pa. Super. 2002), wherein we stated that custody could not, "reasonably be granted on the basis of the parent's 'unsettled past' unless 'the past behavior has an ongoing negative affect on the child's welfare.'" *Id.* at 936 (citation omitted).

In its Rule 1925(a) opinion, the trial court properly distinguished *Wheeler* by noting that the Section 5328(a) custody factors were not in effect at the time of that decision. Trial Court Opinion, 12/18/15, at 11. Instantly, as the trial court noted, "[u]nder the Child Custody Act, the trial court *must* consider a parent's past conduct, specifically the history of drug or alcohol abuse of a party. 23 Pa.C.S.A. § 5328(a)(14)." Trial Court Opinion, 12/18/15, at 11 (emphasis in original). The trial court explained that it found Mother had eight months of sobriety when not being monitored by her probation officer. *See* Trial Court Opinion, 12/18/15, at 12. However, the trial court stated, "Mother's past conduct had a harmful effect on [K.P.], specifically, how the child's educational needs suffered as a result

of Mother's addiction, incarceration, instability, and a lack of attention. Therefore, the trial court appropriately considered Mother's past conduct in conjunction with all of the custody factors and properly awarded [primary physical] custody to [Paternal Grandmother]." Trial Court Opinion, 12/18/15, at 12-13 (citation omitted). Upon review of the totality of the record evidence and the relevant law, we agree with the trial court and discern no abuse of discretion with respect to the weight it placed on Section 5328(a)(14) in fashioning the custody order.

Based on the foregoing, we conclude the trial court did not abuse its discretion in finding it was in K.P.'s best interests for Paternal Grandmother to have primary physical custody and Mother and Father to have partial physical custody, with all three sharing legal custody. *A.V.*, *supra*. Therefore, we affirm the trial court's October 12, 2015 custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/2/2016