J-A06003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| S.U. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.Z. | : | No. 1047 WDA 2020 |

Appeal from the Order Entered August 31, 2020
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 16-004163-007

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: APRIL 12, 2021**

S.U. (Mother) appeals from the order entered on August 31, 2020, that awarded sole legal custody to determine school choice to C.Z. (Father) for the parties' child, M.Z. (Child), born in January of 2015.  A prior order, dated October 5, 2018, remains in effect and governs the parties' shared physical and legal custody of Child for all other matters.  After our extensive review, we affirm.

The relevant scope and standard of review in custody matters are as follows:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it.  …  However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.  …  Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not

interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

> on issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

Mother raises the following issues for our review:

1. Did the [t]rial [c]ourt abuse its discretion when it ignored undisputed evidence of record and found that certain factors favored Father despite the fact that such a conclusion is unreasonable as shown by the record?

2. Did the [t]rial [c]ourt err and/or abuse its discretion by awarding legal custody for the sole purpose of school choice to Father when the record clearly indicates that the Child's best interest was served by awarding said custody to Mother?

Mother's brief at 4.

In its opinion filed in response to Mother's appeal, the trial court set forth a factual and procedural history of this case and listed Mother's nine allegations of error contained in her Pa.R.A.P. 1925(b) statement of matters complained of on appeal. The opinion then discusses the custody factors addressed in Mother's Rule 1925(b) statement,[1] explaining the facts it relied upon and its reasons for awarding Father sole legal custody to determine which school Child should attend.

Essentially, Mother's arguments are requesting that this Court re-find facts and re-weigh the evidence presented. However, our standard of review requires that we "accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." *C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012). Rather, we "may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *E.D. v. M.P.*, 33 A.3d 73, 76 (Pa. Super. 2011). We do not conclude that that is the situation here. The trial court's findings are based on competent evidence contained in the record and its conclusions are not unreasonable.

We have reviewed the certified record, the parties' briefs, the applicable law, and the thorough, well-reasoned opinion authored by the Honorable Elliot C. Howsie of the Court of Common Pleas of Allegheny County, dated October

---

[1] The trial court discussed each of the custody factors contained in 23 Pa.C.S. § 5328, in an opinion attached to its August 31, 2020 order.

30, 2020.  We conclude that Judge Howsie's opinion properly disposes of the issues presented by Mother in this appeal.  Accordingly, we adopt the trial court's opinion as our own and affirm the school choice custody order on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/12/2021

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

S.U.

        Plaintiff,

    v.

C.Z.

        Defendant.

OPINION

No.: FD-16-004163
Sup. Ct. No: 1047 WDA 2020

BY:

Honorable Elliot C. Howsie
440 Ross Street
Suite 5080
Pittsburgh, PA 15219

COPIES TO:

Counsel for Plaintiff:

Dennis M. Blackwell, Esquire
The Blackwell Law Firm
Benedum-Trees Building, 9th Floor
223 Fourth Avenue
Pittsburgh, PA 15222

Counsel for Defendant:

Jason Lasser, Esquire
310 Grant Street, Suite 2825
Pittsburgh, PA 15219

FILED
20 OCT 30 PM 1:59
DEPT. OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

S.U.,

          Plaintiff,

     v.

C.Z.,

          Defendant.

No.: FD-16-004163
Sup. Ct. No: 1047 WDA 2020

## OPINION

October 30, 2020

Judge Elliot C. Howsie

In this matter, Plaintiff S.U. (hereinafter "Mother") appeals from this Court's Order dated August 24, 2020, which granted Defendant C.Z. (hereinafter "Father") sole legal custody for the purpose of determining school choice for the parties' minor child, M.Z. The Court further ruled that the Court's prior Order governing custody remained in full effect and any modifications of the Court Order required the written consent of both parties. The Court's Order granting Father sole legal custody was in the best interest of the child, and within the discretion of the Court. Accordingly, the Court's Order should be affirmed.

## I.     RELEVENT HISTORY

The parties are the biological parents of one minor child: M.Z. (DOB: 1⬤/2015), who is currently five (5) years old. The parties were never married but resided together when the child was born and maintained a relationship until 2016.

The parties' custody schedule is governed by a custody order dated October 5, 2018, wherein the parties exercise shared physical and legal custody of the child on a 5/2/2/5 basis. Mother currently resides in Ohio Township in the Avonworth School District. Father currently resides in Baden, in the Ambridge School District. Since the entry of the 2018 Order of Court, the child attended part-time pre-school at the Wexford Children's Center in the North Allegheny School District. Although neither party has requested a change in the custody schedule at this

time, each parent is seeking to enroll the child in kindergarten in their respective school districts.

As a result of Mother's Petition for Special Relief – School Choice filed on December 26, 2019, the parties participated in a judicial conciliation on February 18, 2020. Unable to resolve the matter at that time, the Court subsequently conducted a one-day School Choice Hearing on August 21, 2020. On August 24, 2020, this Court entered the Order which is the subject of this appeal.

## II.     DISCUSSION

Mother filed the instant appeal and her 1925(b) Statement of Matters Complained of on Appeal (hereinafter "Concise Statement"), in which she alleges the following errors:

"a. This Honorable Court abused its discretion/erred as a matter of law in granting Appellee sole legal custody for purposes of school choice when it was not in the best interest of the child."

"b. This Honorable Court abused its discretion/erred as a matter of law in finding that certain custody factors favored Appellee when the evidence does not support such a finding."

"c. This Honorable Court abused its discretion/erred as a matter of law in finding that Appellant's current arrangement does not provide for stability and continuity in the child's life."

"d. This Honorable Court abused its discretion/erred as a matter of law in finding that Appellee is more likely to attend to the needs of the child when the evidence does not support such a finding."

"e.     This Honorable Court abused its discretion/erred as a matter of law in disregarding that Appellee did not put any concern or preparation into evaluating which school district was in the child's best interest."

"f.     This Honorable Court abused its discretion/erred as a matter of law in finding that the child should attend school in Appellee's district when it is the inferior school district and Appellee did not present any evidence on the specific school district."

"g.     This Honorable Court abused its discretion/erred as a matter of law in disregarding birth mother and favoring stepmother's convenience and preference rather than the best interest of this child."

"h.     This Honorable Court abused its discretion/erred as a matter of law in disregarding that Appellee did not offer evidence to establish any of the custody factors or which party they favor during the custody proceeding."

"i. This Honorable Court abused its discretion/erred as a matter of law in making a decision that was contrary to the weight of the evidence."

3

*See* Mother's Concise Statement, at ¶¶(a)-(i).

Prior to addressing Mother's assertions of error, the Court would note that the determinations of the fact finder, in this case this Court, especially with regard to witness credibility are to be afforded great weight. *Calabrese v Calabrese*, 682 A.2d 393 (Pa. Super. 1996). When parties cannot resolve a dispute about where to educate their children, the Court may act as an arbitrator to decide that issue based on the best interest of the child. *See S.W.D. v. S.A.R.*, 96 A.3d 396, 403-04 (Pa. Super. 2014). In fact, "the primary concern in any custody case is the best interests of the child." *J.M.R. v. J.M.*, 1 A.3d 902, 911 (Pa. Super. 2010). After a comprehensive review of the record, testimony, and exhibits, this Court determined that it was in the best interest of the child for Father to have legal custody as it related to school choice.

While Mother assembles a multitude of alleged errors, in actuality Mother's contentions are two-fold: (1) that this Court abused its discretion/erred as a matter of law in applying the custody factors listed in 23 Pa.C.S.A. § 5328(a) in deciding the best interest of the child as it relates to school choice, and (2) that this Court abused its discretion/erred as a matter of law by favoring Father and his choice of school district despite the weight of the evidence. Therefore, this discussion will address each of these issues in turn.

## A. Custody Factors

When read as a whole, the § 5328(a) factors were "designed to guide the best-interest analysis when a trial court is ordering which party has the right to a form of custody." *S.W.D.*, 96 A.3d at 403. In determining what is in the best interest of the child regarding school choice in this case, some of the factors provided were not applicable and for that reason, there was no evidence presented by either party concerning these issues. For example, past or present abuse committed by a party or member of the party's household, as provided per § 5328(a)(2), was not a factor that was applicable to the issue of school choice and no evidence was presented to support or refute a finding of such. Additionally, since the child did not testify and neither party presented evidence of the child's preference, this Court did not further analyze § 5328(a)(7), the factor related to the well-reasoned preference of the child. Per § 5328(a)(9), the factor related to the emotional

4

needs of the child was not applicable to a determination of school choice. In turn, this Court did not assign significant weight to this factor. Pursuant to mandates of § 5328(a)(14) and (15), evidence of drug or alcohol abuse and the mental and physical condition of a party within either household are factors to be considered. However, the parties did not present any evidence regarding these factors. This Court attributed significant weight to the remaining factors in making its determination regarding legal custody. Accordingly, those factors will be discussed in more detail while addressing the issues raised in Mother's Concise Statement.

Per § 5328(a)(1), the Court found that neither parent was more likely than the other to encourage and permit frequent and continuing contact between the child and the other parent. In determining that this factor was equal, this Court concluded that the testimony adduced at trial established that both parents have demonstrated a history of encouraging and maintaining frequent contact between the minor child and the other parent. The testimony indicated that both parents ensure that the child feels comfortable keeping in contact with the other parent. *See* Transcript of Testimony, dated August 21, 2020 ("T.T."), at 118-19. Moreover, neither parent presented evidence expressing a desire to change the physical custody schedule. The matter at hand, was solely focused on the Court making a determination regarding school choice. Additionally, pursuant to § 5328(a)(3), the Court concluded that both parties equally performed duties on behalf of the minor child. The evidence established that both parents do an adequate job of co-parenting and none of the evidence presented suggested that either parent had taken steps to turn the child against the other parent consistent with requirements established in § 5328(a)(8). Similarly, while considering § 5328(a)(13), the Court concluded that Mother and Father have demonstrated the ability to cooperate with one another and work collaboratively when parenting the child. Although Father alleged – and Mother admitted – that there were some occasions in the past when Mother failed to inform Father about scheduled activities, the evidence established that the parties have done an adequate job of caring for and co-parenting the child. *T.T.* at 93. When considering § 5328(a)(11), the testimony indicated that the parties currently live approximately 12.3 miles or twenty-three minutes from each other. Therefore, the proximity of the parties' residences was not a relevant consideration in

5

making the school choice determination.

Mother's Concise Statement at ¶(c) specifically takes issue with this Court's finding based upon its consideration of § 5328(a)(4). However, after considering the testimony adduced at trial, this Court determined that Father provided more stability and continuity in the child's life. Mother further argues in her Concise Statement, that the Court erred in concluding that Mother's "current arrangement" does not allow for stability and continuity. Although Mother currently has a residence, employment and a vehicle for transportation, the evidence conclusively demonstrated that none of these necessities were independently acquired by Mother. Mother's testimony confirmed that she has moved a total of five (5) times since 2016. During that time, Mother has lived in: (1) Wexford, Pennsylvania with her aunt and grandmother; (2) Volant, Pennsylvania with her father; (3) again in Wexford, Pennsylvania with her aunt and grandmother; (4) on Neville Island; and (5) at her current residence in Avonworth, Pennsylvania since the summer of 2019. *T.T.*, at 118-19. Mother previously lived in Avonworth in 2010 and 2011, and subsequently moved back to Avonworth into a home owned by the child's paternal grandfather in the summer of 2019. *Id.* at 119. Mother is also currently employed by paternal grandfather's company and paternal grandfather purchased the vehicle that she currently drives. *Id.* at 122. While testifying, Mother maintained that her housing was stable in her "current arrangement" and that she had no intentions of moving out of the Avonworth School District. However, Mother's housing, employment, and transportation are completely contingent upon her relationship with the paternal grandfather. Despite the paternal grandfather's willingness to assume the responsibility of supporting Mother and the child, there is no guarantee that he will opt to do so long term. In the event that the child's paternal grandfather is unable or unwilling to provide Mother with housing, employment and a car, Mother failed to produce any evidence suggesting that she would be able to maintain her current standard of living, for herself or for the child. In fact, Mother testified that she initially moved out of Avonworth due to her inability to afford to reside in that community. Given that Mother has not been in the Avonworth School District for an extended period of time and it cannot be certain that she will remain in the school district long term, this Court concluded that Mother's current arrangement does not provide for

stability and continuity in the child's life. Conversely, Father testified that he married his wife D.Z. approximately three (3) years ago, and Father has since adopted her daughter A.Z., who is five (5) years old. *Id.* at 137. Father also stated that in 2018, he and his wife D.Z. purchased a home in the Ambridge School District. The testimony further established that Father's family fully intend to remain in the community long term. *Id.* at 140-41. Moreover, Father testified that his employment with Lindy Paving and his wife's employment as a nurse provides them with the ability to provide for the child and independently maintain their current standard of living for the foreseeable future.

Per § 5328(a)(5), this factor regarding the availability of extended family favors Father. Father currently resides in the Ambridge School District with his wife, and their daughter A.Z. During trial, the testimony provided that Father works full time for Lindy Paving and his wife, D.Z. works casually as a registered nurse at Passavant Hospital. *T.T.*, at 156-58. Both D.Z. and Father testified that as a result of D.Z.'s flexible work schedule, she is primarily responsible for transporting the child and A.Z. to and from extracurricular activities and school. The testimony demonstrated that Father and D.Z. share the responsibilities of assisting the children with their virtual learning, completing their schoolwork and attending medical appointments. Father's mother and stepfather live approximately five (5) minutes from Father's residence and Father testified that both children have an excellent relationship with their grandparents. *Id.* at 147-48. The children see their grandparents three to four times per week and their grandparents play a very active role in the children's lives. *Id.* Additionally, D.Z.'s parents live approximately thirty (30) minutes from Father and D.Z.'s residence. *Id.* Father credibly testified that D.Z.'s parents frequently attend the child's extracurricular events and assist with childcare. *Id.* Both children appear to have a close relationship with D.Z.S parents, and they see her parents a few times per week as well. Conversely, Mother does not have extended family members in the Avonworth School District, where she currently resides. Mother did testify that Father's brother lives in the Avonworth community, and M.Z.'s paternal grandparents own a house in close proximity to Mother's residence. *Id.* at 77. Although the child's parental grandparents do own a home in Avonworth, the testimony clearly established that they spend a large portion of the year in Florida at their vacation

7

home. *Id.* at 87-89. Accordingly, the Court concluded that the amount of parental support that the child's paternal grandparents would be available to offer Mother is questionable at best.

Similarly, per § 5328(a)(6), the child's sibling relationships favored Father in this case. Father's adopted daughter, A.Z., resides in the home with ███ M.Z., *D.Z.* ███████ and Father. *T.T.*, at 137. The testimony demonstrated that the sisters have been in each other's lives for the past four (4) years and have become best friends and are inseparable. *Id.* at 241-42. In the past, the children attended the same school and participated in the same extracurricular activities. *Id.* Permitting the child to attend school in the Ambridge School District would allow the sisters to attend the same school and maintain the close relationship that they currently have. Mother does not have any other children.

Mother's Concise Statement at ¶ (d) specifically takes issue with this Court's finding pursuant to § 5328(a)(10). This Court determined that Father is more likely to attend to the daily physical, emotional, and educational development needs of the child. Father's concern for the parties' inability to transport the child to and from school in a timely fashion supports this Court's conclusion. Mother's testimony indicated that the Avonworth School District would require the child to attend classes daily from 1:00 p.m. to 3:30 p.m. initially. *T.T.*, at 114. Whereas, the Ambridge School District would require the child and her sister A.Z. to attend school from 8:30 a.m. to 3:30 p.m., two (2) days per week and virtually the remaining days of the week. *Id.* at 115. Although the current daily schedules, requiring the children to attend school on a limited basis, would not pose a problem for Father and ██████ *D.Z.* to transport M.Z. and A.Z. to different schools, a future schedule requiring the children to attend school daily from 8:30 a.m. to 3:30 p.m. would. Father testified that he is required to report to work prior to the time the children leave for school and he does not get off from work until 3:30 p.m. *Id.* at 156. Consequently, when the children are required to attend school on a daily basis, ████████ *D.Z.* would be solely responsible for getting A.Z. to the bus stop in the morning to ensure she arrives to school on time. ████████ *D.Z.* would then be responsible for driving thirty (30) minutes to the Avonworth School District to ensure that M.Z. also gets to school on time. Additionally, ████████ *D.Z.* would have the unenviable responsibility of being available in Avonworth

8

to get M.Z. after school, at the same time that she needs to be available in Ambridge, thirty (30) minutes away, when A.Z. gets out of school. The testimony clearly demonstrated that in the past Father and Mother have been required to switch scheduled custody days to ensure that the parties would be available to transport the children to and from their respective schools. The testimony further established that this approach has been unsuccessful. D.Z. testified that despite the parties' best efforts, there were times when she had to take A.Z. to school late to ensure that M.Z. would be on time for school. *Id.* at 249-50. Father astutely testified that if this Court permitted the child to attend school in Avonworth, it would be impossible for him and D.Z. to get both children to school on time, since the schools start and finish at the same time. *Id.* at 159. It is noteworthy that Mother was fully aware of the problems associated with transporting the children to and from different schools. During direct examination, Mother offered testimony regarding the previous transportation issues that the parties experienced with the children attending different schools. In Mother's Concise Statement at ¶ (g), Mother contends that this Court disregarded her concerns and favored D.Z.'s convenience, which is simply not the case. As stated above and clearly demonstrated in the record, the parties simply cannot be in two places at one time. On the other hand, Mother testified that due to her employment at the paternal grandfather's place of business, Mother has an extremely flexible work schedule and she has the ability to arrive at work whenever she wants. *T.T.*, at 20. The testimony established that Mother and Father were aware of the transportation issues related to M.Z. and A.Z. attending different schools. Therefore, the Court correctly concluded that it was not in the best interest of M.Z. to attend school in the Avonworth School District.

Finally, pursuant to § 5328(a)(12), Mother and Father have shared physical custody of M.Z. and the Court concluded that each parent has put forth extraordinary effort in parenting and caring for her. Furthermore, Mother and Father have a demonstrated history of working cooperatively with one another when parenting M.Z.

### B. Best-Interest Analysis

The paramount concern in a child custody matter is the best interest

9

of the child. *Douglas v. Wright*, 801 A.2d 586, 586 (Pa. Super 2002); *Wheeler v. Mazur*, 793 A.2d 929 (Pa. Super. 2002). On issues of credibility and weight of the evidence, the appellate court must defer to the findings of the trial court, who had the opportunity to review the evidence, observe the proceedings and the demeanor of the witnesses. *E.A.L. v. L.J.W.*, 662 A.2d 1009, 1113 (1995). In Mother's Concise Statement at ¶¶ (e)-(g), she alleges that this Court erred by concluding that M.Z. should attend what Mother considers to be an "inferior" school district. Mother alleges that Father presented no preparation or evidence to support a finding that the Ambridge School District was in the child's best interest. Mother's allegations are not supported by the record.

During trial, both parties entered the registration information, school schedules, and other pertinent information related to their respected school districts of choice. *See* Exhibits 2, 4, 5, 6, 7, 9, 12, 13, 14, 17, 18, 19, 22, 23. In an attempt to support Mother's claim that the Avonworth School District was superior to the Ambridge School District, Mother introduced evidence and testified to what she independently believed was the best school of choice based only upon her research. For example, Mother used online research tools such as Niche to support her contention. *See* Exhibits 27-31. However, the testimony adduced at trial actually established that the Avonworth and Ambridge School Districts are fairly compatible in terms of education as it relates to their elementary schools. Even the exhibits provided by Mother indicated that the overall grade for Avonworth Primary Center is a B, while Economy Public Elementary School (in the Ambridge School District) is a B+. *T.T.*, at 107. Additionally, in ranking diversity, Economy Public is ranked as a B-, while Avonworth Primary has a C+ ranking. *Id.* Both schools have an A- ranking when assessing their teachers. *Id.* Both schools have developed a comprehensive plan for educating the children during the COVID-19 pandemic and the children will be provided with iPads to ensure that they are able to attend school remotely whenever necessary. *See* Exhibits 12 and 22. Therefore, the evidence presented by Mother supports a finding that the schools are similar in terms of the educational opportunities that will be provided to M.Z. Mother's contentions to the contrary are not supported by the record. Although this Court considered evidence provided by Mother's research of the two school districts, this was but one factor considered by the Court in making the overall determination regarding

the best interest of the child. By analyzing each of the applicable factors in 23 Pa.C.S.A. § 5328(a), this Court readily concluded that it was in the best interest of the child for Father to have sole legal custody for the purposes of determining school choice.

## III.    CONCLUSION

Following a detailed discussion of the custody factors and other errors alleged in Mother's Concise Statement, this Court concludes that it is in the child's best interest for Father to have sole legal custody for the purposes of determining school choice. For the aforementioned reasons, this Court's August 24, 2020 order should be affirmed.

BY THE COURT:

_____, J.

11